Ronald P. Mysliwiec, Esq.
Law Offices of Ronald P. Mysliwiec
Attorneys for Plaintiff
530 Third Street
Brooklyn, New York 11215
(718) 768-0834
rpm@rpmlawny.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

MEGAN P. DAVIS,

           Plaintiff,

   -against-

CLIFTON R. FORDHAM,

           Defendant.

Civil Action No. CV 12-6266 (JBW)

**SECOND AMENDED COMPLAINT**

---

Plaintiff Megan P. Davis ("Davis"), by her attorney, Ronald P. Mysliwiec, Esq., for her amended complaint against defendant Clifton R. Fordham ("Fordham"), alleges:

**INTRODUCTION**

1. This is an action for an accounting with respect to, and the sale of the cooperative apartment located at 44 Tompkins Place, Apt. 1, Brooklyn, New York 11231 (hereinafter referred to as the "Apartment"). The Apartment is one of three cooperative apartments in the brownstone building at that address. The Apartment was purchased by Davis and Fordham in March 2010 as joint tenants with rights of survivorship, when they were in a romantic relationship. That relationship ended in late November 2011.

2. The Apartment was purchased for $818,230.00 on March 4, 2010. The Apartment is the only property jointly owned by Davis and Fordham.

**THE PARTIES**

3. Davis was at all material times and is at the present time a resident of the City and State of New York, County of Kings.

4. Fordham was from December 2004 until in or about November 2011 – i. e., at all times relevant to this action --a resident of the City and State of New York, County of Kings. Upon information and belief, Fordham now teaches at Temple University and is presently a resident of the State of Pennsylvania.

**JURISDICTION AND VENUE**

5. The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 by virtue of the diversity of citizenship of the plaintiff and the defendant and the fact that the amount in controversy exceeds the sum of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to the claims occurred in this District and the property that is the subject of this action is situated in this District.

**FACTUAL ALLEGATIONS**

**A. The Relationship Between Davis And Fordham**

7. Davis and Fordham began dating in December 2004, at which time Fordham was living in Philadelphia, Pennsylvania, and Davis was living in New York, New York. Davis moved to Brooklyn, New York a few months after she and Fordham started dating.

8. Fordham is an architect and Davis is a lawyer.

9. In May 2007, Fordham moved to Brooklyn, New York, to live with Davis. After Fordham moved to New York, Davis and Fordham lived together in Davis's one bedroom apartment in Brooklyn. In December 2008, Davis and Fordham became engaged to be married.

10. During their entire relationship, Fordham and Davis maintained separate finances. They never, at any time, had a joint bank account, nor did they ever have joint credit cards.

**B.	Purchase And Renovation Of The Apartment**

11. In or about the beginning of 2009, Fordham and Davis decided to begin looking for a new apartment.

12. After looking at listings and apartments for approximately a year, in or about November 2009, Davis and Fordham contracted to purchase the Apartment.

13. In December 2009, after Davis and Fordham had signed a contract for the purchase of the Apartment but before the closing, Fordham was offered a teaching position at Howard University in Washington, D.C. and informed Davis that he was accepting the job.

14. In January 2010, Fordham began working at Howard University. Fordham taught on Mondays, Wednesdays and Fridays. As a result of his teaching schedule, he generally stayed in Washington, D.C. during the week (at an apartment that he rented there), and returned to New York for the weekends (he arrived very late Friday night and then left for Washington, D.C. early Sunday evening).

15. On March 4, 2010, two months after Fordham began his teaching job at Howard University, Fordham and Davis closed on the Apartment.

16. During the summer months, Fordham volunteered to teach summer school at Howard University during the months of June and July.

17. As a result of Fordham's position at Howard University, Fordham and Davis lived apart (Fordham lived in Washington, D.C. and Davis lived in the Apartment) most of the time during the last two years of their relationship. Fordham paid the rental and other expenses related to his Washington, D.C. apartment.

18. Davis paid $178,379.76 of the $208,379.76 down payment for the Apartment, and Fordham paid $30,000.00 toward the down payment. The remainder of the purchase price for the Apartment and most of the closing costs were financed by a cooperative unit loan in the amount of $613,672.00 between Davis and Fordham as borrowers and J.P. Morgan Chase Bank as lender (hereinafter referred to as the "Cooperative Loan"). At the closing on the Apartment, Davis also paid the closing costs that were not covered by the Cooperative Loan ($850.00) and the prorated portion of the maintenance payment for March ($672.00).

19. After they purchased the Apartment, Davis and Fordham made certain renovations to the Apartment. Those renovations were not only made with the agreement and consent of Fordham, but at his insistence.

20. Davis contributed more than $65,300.00 to the cost of the renovations of the Apartment, including $24,500.00 paid to Fordham for alleged renovation-related expenses. Fordham has never provided receipts sufficient to justify these expenses.

21. Although Fordham has claimed that he, too, contributed to the cost of the renovations, he has to date failed and refused to provide any corroboration of his alleged contributions.

22.     In addition to paying more than $65,300.00 for the renovations to the Apartment, Davis paid all the expenses related to the Apartment for the entire time that she and Fordham lived there together from March 2010 through November 2011, *i.e.,* Davis made all payments under the Cooperative Loan, paid the monthly maintenance fees, paid all building assessments, paid all utilities, and paid for homeowner's insurance, all of which totaled an amount not less than $91,904.39.

23.     Other than a single contribution of $1,383.48 with respect to one of the building assessments, Fordham made *no* contributions whatsoever with respect to *any* of these Apartment expenses described in paragraph 22 above.  During all this time, of course, Fordham maintained his separate residence in Washington, D.C.

**C.      Demise Of The Relationship Between Davis And Fordham**

24.     Davis terminated her relationship with Fordham at the end of November 2011.

25.     At Fordham's request, Davis sent to him by Fed Ex those personal items that he needed immediately.  A few weeks later, Davis packed up the remainder of Fordham's things and paid to have them shipped to him in Washington, D.C.

26.     Since the end of the relationship between Davis and Fordham, Davis has lived in the Apartment and continued to pay for all of the Apartment expenses, including the Cooperative Loan payments, the maintenance fees, and all utilities, without any contribution whatsoever from Fordham.

27.     To date, the post-relationship (since November 2011) expenses related to the Apartment that have been paid by Davis which, in total, have been an amount not less than $57,208.38.

**D.     Davis's Efforts To Resolve With Fordham The Issues Between Them Regarding The Apartment**

28.     Because Fordham no longer lived or worked in New York and because Davis was willing to undertake full responsibility for the Apartment, Davis obtained a commitment letter from J.P. Morgan Chase Home Mortgage Finance ("Chase Bank") in or about late January 2012 to refinance the Cooperative Loan in her name only.  As he was a joint tenant of the Apartment, Fordham's cooperation was required in transferring his interest to Davis so that she could close on her Chase Bank loan.

29.     The commitment letter that Davis obtained from Chase Bank, in addition to refinancing the Cooperative Loan in Davis' name only, also allowed Davis to take advantage of lower interest rates.  Based on the interest rate that Chase Bank was willing to provide Davis in January 2012, Davis could have saved approximately $400.00 per month on the Cooperative Loan payments, a savings that Davis had to forfeit because of the parties' inability to agree on the disposition of the Apartment.

30.     Consequently, Davis had to forgo the refinancing option that she obtained from Chase Bank.

**FIRST CLAIM FOR RELIEF**

**(For An Accounting)**

31.     Davis repeats and realleges each and every allegation contained in paragraphs 1 through 30, above, as if fully set forth herein.

32.     On March 4, 2010, Davis and Fordham purchased the Apartment pursuant to a contract of sale for the purchase price of $818,230.00.

33. As a result of their purchase of the Apartment, Davis and Fordham own as joint tenants with right of survivorship the 280 cooperatives shares of the capital stock of 44 Tompkins Place Corp. allocated to Cooperative Apartment No. 1 located at 44 Tompkins Place, Brooklyn, NY 11231 and together hold the appurtenant proprietary lease.

34. Davis contributed $178,379.76 to the down payment of $208,379.76 for the Apartment and Fordham contributed $30,000.00 to the down payment. Davis also paid the closing costs of $850.00, as well as the prorated portion of the maintenance payment for March in the amount of $672.00.

35. The remainder of the purchase price for the Apartment and the closing costs were financed by the Cooperative Loan in the amount of $613,672.00.

36. Since the closing on the Apartment, Davis has paid all expenses related to the Apartment, including, but not limited to, more than $65,300.00 for the costs of renovating the Apartment, the amounts due under the Cooperative Loan, the monthly maintenance fees, all building assessments (with the exception of $1,383.48), the cost of homeowner's insurance, and all utility charges, a total amount not less than $214,412.77.

37. Davis, therefore, seeks a judgment by the Court ordering an accounting to determine the parties' respective interests in the Apartment, taking into account: (a) the respective contributions of the parties toward the acquisition of the Apartment; (b) the respective contributions made by the parties to the improvements thereto; and (c) the respective contributions made by each party to the Cooperative Loan repayment, monthly maintenance fees, building assessments, utilities and homeowner's insurance.

## SECOND CLAIM FOR RELIEF

## (For Sale Pursuant to New York Real
## Property Actions and Proceedings Law, §§ 901 (1))

38. Davis repeats and realleges each and every allegation contained in paragraphs 1 through 37, above, as if fully set forth herein.

39. The Apartment is so situated that a division or partition thereof between the parties entitled thereto according to their respective rights and interests cannot be had without great prejudice to the parties, and, therefore, a sale of the Apartment is necessary.

40. There are no encumbrances of record on the leasehold tenancy for the Apartment other than the Cooperative Loan and no other person is interested in the premises.

41. The parties to this action are competent and of full age.

42. The Apartment is the only property owned jointly or in common by Davis and Fordham.

43. Davis, therefore, seeks a judgment by the Court:

(a) ordering a judicial sale of the Apartment at the highest price to bona fide purchasers approved by the 44 Tompkins Place Co-op Board;

(b) allocating of the proceeds of the sale for the payment of the full amount owed on the Cooperative Loan and then, sale proceeds permitting, payment to the parties of their respective contributions to the purchase, renovation, upkeep and maintenance of the Apartment;

(c) if the sale proceeds fail fully to equal the amounts described in (b) above, distributing of the sale proceeds in excess of the full amount owed on the Cooperative Loan to the parties in proportion to the parties' respective interests in the Apartment as determined by the accounting;

(d) if the sale proceeds exceed all of the amounts described in (c) above, distributing of the excess sale proceeds to the parties in proportion to the parties' respective interests in the Apartment as determined by the accounting;

(e) allowing Davis to bid as a purchaser at the judicial sale of the Apartment; and

(f) restraining and enjoining Fordham from refusing to assign to the successful purchaser his interest in the proprietary lease to the Apartment, from refusing to convey his interest in the 280 shares of 44 Tompkins Place Corp. to the successful purchaser, or from otherwise refusing to cooperate in the conveyance of the Apartment.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff Davis demands judgment against defendant Fordham as follows:

(A) on the first claim for relief, in favor of Davis and against Fordham, an accounting to determine the parties' respective interests in the Apartment, taking into account: (i) the respective contributions of the parties toward the acquisition of the Apartment; (ii) the respective contributions made by the parties to the improvements thereto; and (iii) the respective contributions made by each party to the Cooperative Loan repayment, monthly maintenance fees, building assessments, utilities and homeowner's insurance.

(B) on the second claim for relief, in favor of Davis and against Fordham:

(i) ordering a judicial sale of the Apartment at the highest price to bona fide purchasers approved by the 44 Tompkins Place Co-op Board;

(ii) allocating the proceeds of the sale for the payment of the full amount owed on the Cooperative Loan and then, sale proceeds permitting, payment to the parties of their respective contributions to the purchase, renovation, upkeep and maintenance of the Apartment;

(iii) if the sale proceeds fail fully to equal the amounts described in (ii) above, distributing of the sale proceeds in excess of the full amount owed on the Cooperative Loan to the parties in proportion to the parties' respective interests in the Apartment as determined by the accounting;

(iv) if the sale proceeds exceed all of the amounts described in (iii) above, distributing of the excess sale proceeds to the parties in proportion to the parties' respective interests in the Apartment as determined by the accounting;

(v) allowing Davis to bid as a purchaser at the judicial sale of the Apartment; and

(vi) restraining and enjoining Fordham from refusing to assign to the successful purchaser his interest in the proprietary lease to the Apartment, from refusing to convey his interest in the 280 shares of 44 Tompkins Place Corp. to the successful purchaser, or from otherwise refusing to cooperate in the conveyance of the Apartment.

(C) awarding to Davis the costs and disbursements of this action; and

(D) such other and further relief as the Court deems just and proper.

Dated: Brooklyn, New York
April 3, 2013

        LAW OFFICES OF RONALD P. MYSLIWIEC


        By: s/_____
            Ronald P. Mysliwiec
            530 Third Street
            Brooklyn, New York 11215
            (718) 768-0834
            rpm@rpmlawny.com
            Attorneys for Plaintiff